ALMON M. KEENEY AND WIFE vs. THE GLOBE MILL COMPANY
AND OTHERS.

A testator bequeathed the use of certain shares of stock of a corporation to his
wife for her life, remainder to his children. The administrator, by mistake,
in the settlement of the estate distributed the stock to the widow absolutely,
which distribution was accepted, and the administration account allowed, by
the court of probate. The administrator transferred the stock to the widow
on the books of the company, and six years afterward a judgment creditor of
the widow, in good faith, caused an execution against her to be levied on it
as her property, and it was sold at sheriff's sale to A, who, a year afterward
sold it in good faith, for a valuable consideration, to B, a bonâ fide and inno-
cent purchaser, to whom it was duly transferred on the books of the company.
The petitioner, a daughter of the testator, was a minor when the decrees of
the court of probate accepting the distribution and allowing the administra-
tion account were passed, and on coming of age appealed from them, and
procured them to be reversed. ·

On a bill in equity praying that the transfers might be set aside, and that B
might be ordered to transfer the stock to the administrator, it was holden that
B had a good legal and equitable title to the stock ; and that if the petitioner
had been wronged in the distribution of the estate she had a remedy against
the administrator on his probate bond, but was entitled to no relief as
against B.

BILL IN EQUITY to set aside a transfer of seven shares of
the capital stock of the Globe Mill Company ; brought to the
Superior Court for Hartford county, and tried before *Phelps, J.*

The petitioner Helen M. Keeney, the wife of Almon M. Keeney the other petitioner, is a daughter and one of the heirs at law, legatees, and devisees, of Willis Grant, late of South Windsor, deceased. Willis Grant died October 6th, 1855, leaving real and personal estate, and a will which was duly proved and approved by the court of probate for the district of East Windsor, October 16th, 1855. He left a widow, four sons and two daughters. By his will he gave to his widow the use of one-third of all his estate, both real and personal, during her life; the remainder of his estate, including the reversion in the widow's third, he gave to his children in fee, and in such proportions that the sons should have equal shares, and each of the daughters one-half as much as each of the sons. No executor having been named in the will, William C. Grant was appointed administrator with the will annexed, and gave bond and proceeded to settle the estate.

On the 13th of April, 1857, the administration account was settled, showing in the hands of the administrator for distribution personal property to the amount of $540.41. This balance of personal property consisted of twenty-two shares of stock in the Globe Mill Company, which was distributed to the widow and heirs in fee, seven shares being distributed to the widow. The distribution was made sometime between the 13th and 30th days of April, 1857, and was returned to and accepted by the court of probate December 3d, 1857.

On the 30th of April, 1857, the administrator transferred on the books of the Globe Mill Company seven shares of stock to the widow. The administrator knew that the widow was entitled only to the life use of her thirds of the estate according to the provisions of the will, and he supposed that the distribution gave her only such use, and he intended to convey to her only a life use in said seven shares of stock, but, through ignorance and mistake, in making the transfer to her he used the common and ordinary form of transfer, and thereby conveyed to her an absolute estate in fee simple in the stock. The administrator and widow both supposed that the transfer to her conveyed only a life estate in the stock,

and such was their understanding and belief when the seven shares were afterward attached and sold as hereinafter mentioned.

Helen M. Keeney, the petitioner, was a minor during the time of the transactions above set forth, and so continued until the 22d of July, 1867, when she became of full age, and within eighteen months thereafter she and her husband appealed from the orders and decrees of the probate court allowing the administration account and accepting the distribution, which appeal was sustained by the Superior Court, and said orders and decrees were annulled and reversed.

On the 28th of February, 1861, the seven shares of stock were attached as the property of the widow, at the suit of Fanny Hosmer, one of the respondents, returnable to the Superior Court, in which judgment was duly obtained, and execution issued November 28th, 1862, and levied on the seven shares of stock, which were regularly posted, and all the right, title, and interest of the widow therein were sold January 3d, 1863, to satisfy the judgment, to Francis W. Cowles, the respondent. The judgment was fully satisfied by the sale, and the execution with the officer's return thereon was attached to the record book of transfers of the company; and on the 25th of April, 1864, the seven shares were sold in good faith by Cowles, for a valuable consideration, and duly transferred on the books of the company, to Charles Annis, one of the respondents, who is the present holder thereof, and was an innocent and *bonâ fide* purchaser. Cowles had no knowledge of the fact that the widow was entitled to only the use of the shares for life, and was not the owner of them in fee, but had reason to believe, and did believe in good faith, that the transfer books of the company correctly indicated the title to and ownership of the shares, and he was an innocent holder and owner of them. And Fanny Hosmer, at the time of her attachment and the levy of her execution, supposed in good faith that the widow was the legal owner in fee of the stock.

On these facts the Superior Court passed a decree ordering Annis to transfer the stock to the administrator, on receiving

from him the amount which he had paid for it, with interest from the date of the purchase. The respondents filed a motion in error and a motion for a new trial.

*A. P. Hyde* and *Calhoun*, in support of the motions.

*Chapman* and *R. Welles*, contra.

FOSTER, J. Seven shares of stock in the Globe Mill Company, part of the estate of Willis Grant deceased, form the subject of this controversy. The par value of this stock, $25 per share, is $175, and it was distributed to the widow of the deceased at $180. Helen M. Keeney, one of these petitioners, is a daughter of the said Willis Grant, and under the will of her father appears to be entitled to one-tenth of this property, subject to the life estate of the widow, her mother, in one-third of the same. The value of the interest involved would seem scarcely to justify a protracted litigation, but as to that the parties must judge; the principles of law and equity applicable to the subject are the same, whether the amount in issue be great or small.

By the will of the deceased the use of one-third of all his estate was given to his widow during her life; the remainder to his children. He had four sons and two daughters. The sons were to have equal shares, and the daughters half as much as the sons. As no executor was appointed by the will, an administrator with the will annexed was appointed by the court of probate. That administrator settled his account in the court of probate on the 13th of April, 1857. There remained in hand of personal property, after paying the debts and charges allowed, twenty-two shares of stock in the Globe Mill Company, which was then distributed to the widow and heirs, as an absolute estate. Seven shares were distributed to the widow, and on the 30th of April, 1857, the administrator transferred the same to her on the books of the company. The distribution was returned to and accepted by the court of probate on the 3d of December, 1857. On the 28th of February, 1861, the said seven shares were attached, as the

property of the widow, at the suit of Fanny Hosmer, in which suit judgment was duly obtained, and an execution issued, November 28th, 1862. All the right, title and interest of the said widow, Emily Grant, in and to said stock, was sold January 3d, 1863, to Francis W. Cowles, to satisfy said judgment and execution; and the execution, with the officer's return thereon, was attached to the record book of transfers of said company. On the 25th of April, 1864, the said seven shares of stock were sold in good faith by said Cowles, for a valuable consideration, to Charles Annis, one of the respondents, an innocent and *bonâ fide* purchaser, and were duly transferred to him on the books of the company. It is under these circumstances that Annis is now the holder of these shares of stock.

We have no hesitation in saying that he holds by a good legal and equitable title. The administrator, in whom the legal title to this stock was vested, transferred it to Emily Grant in April, 1857. As he intended to convey only a life interest, and as she supposed she received no more, as between these parties a correction could doubtless have been made; but after standing in her name nearly six years, it was sold on an execution against her to pay an honest debt. The purchaser at sheriff's sale held it over a year, and then sold it to the present owner, who held it more than three years before this bill was brought. To dispossess him of this property in face of these facts, or to interfere at all with the proper enjoyment and disposition of it, would be an act of arbitrary power. None of the incidents of a perfect title are wanting. What stockholder in this company, what owner of any property, could be considered safe, if such a title as this is not to be recognized and protected?

That the petitioner Helen was a minor while these proceedings were had in the court of probate; that an appeal has been taken by her from some of these orders and decrees since she became of age, and a reversal of the same obtained, cannot affect this question. If she has been wronged in the distribution of this estate she can have redress against the administrator on his probate bond. *Hough* v. *Bailey*, 32

Conn., 290, 291, per HINMAN, C. J.   At all events we see no relief for her as against these respondents.

The judgment of the court below is therefore reversed; in the decree there is manifest error.   The motion for a new trial is denied.

In this opinion the other judges concurred.